IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| KARIN LEUTHY and KELLI WHITLOCK BURTON,<br><br>   Plaintiffs,<br><br> v.<br><br>PAUL R. LEPAGE,<br>Governor of Maine, in his individual and official capacity,<br><br>   Defendant. | Civil Action No. _____ |

## COMPLAINT
## DECLARATORY AND INJUNCTIVE RELIEF REQUESTED

Plaintiffs Karin Leuthy and Kelli Whitlock Burton ("Plaintiffs"), bring this complaint against Governor Paul R. LePage ("Defendant"), and allege the following:

### INTRODUCTION

1. This is a freedom of speech and right to petition case brought under the First and Fourteenth Amendments to the United States Constitution; and Article I, Sections 4 and 15 of the Maine State Constitution for declaratory and injunctive relief against Governor Paul LePage ("Governor LePage" or the "Governor") in his individual capacity and in his official capacity as the Governor of the State of Maine, arising out of his unlawful censorship of Plaintiffs on his official "Paul LePage, Maine's Governor" Facebook page.

1

2.       Social media has recently become a crucial venue for public officials to disseminate news and information, and an equally crucial opportunity for the public to express their thoughts and opinions in response to such news. As the Supreme Court stated last month, Facebook, Twitter, and other social media platforms provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). The Supreme Court additionally stated that these platforms are "revolution[ary]" in their ability to increase civic engagement with elected officials through the instantaneous and direct communication opportunities provided by these platforms. *Id*. at 1736. This ability of social media platforms such as Facebook to serve as forums for direct communication between constituents and public officials is analogous to speech that, until recently, was only attainable for people who were physically gathered in the same space, such as in a public park or town hall. Lyrissa Lidsky, *Public Forum 2.0*, 91 B.U. L. Rev. 1975, 2005 (2011). As such, cyberspace has become one of the most important places for the exchange of views, one which enables a person "to become a town crier with a voice that resonates farther than it could from any soapbox" and must not be unlawfully restricted. *Reno v. American Civil Liberties Union*, 117 S. Ct. 2329, 2344, 521 U.S. 844, 870 (1997).

3.       Governor LePage's official Facebook page is a significant source of information and news for the people of Maine, as well as a popular forum for speech by, to, and about the Governor. By blocking access to this forum and deleting comments based on the viewpoint of the speaker, Governor LePage has violated plaintiffs' right to free expression and to petition the government for a redress of wrongs and grievances.

4.       Despite being a novel issue, courts have already "repeatedly affirmed the First Amendment significance of social media, holding that speech utilizing Facebook is subject to the

same First Amendment protections as any other speech." *Davison v. Loudoun Cty. Bd. of Supervisors*, 227 F. Supp. 3d 605, 611 (E.D. Va. 2017).

5. The Governor's operation of his official Facebook page constitutes a limited public forum under the First Amendment. The Governor's Facebook page is accessible to the public, including those without a Facebook account; in regard to interactions on the page, it is accessible for all Facebook users, regardless of whether the user "likes" or "follows" the page.

6. The Governor's Facebook page is dynamic, with his posts reaching anywhere from tens to thousands of comments, likes, and shares. Additionally, his own office has labeled this as his "official page." The page is linked to the Governor's blog on his government site, it is deemed as his "official" page in the "About" section of his page, and has been classified by his office as his official Facebook page when asked. The page is used by the Governor to share press releases exclusive to the page, promote his policies, and to encourage his supporters to take action.

7. Plaintiffs include the Governor's constituents from who have been banned from interacting on his page and have had their comments deleted due to their criticism of the Governor and his policies. As a result of their criticism, Plaintiffs have been impeded from commenting on the Governor's posts, sharing his posts, or having any type of discussions on his posts. As a limited public forum, especially one in which individuals are participating in political speech, the Plaintiffs' are protected by the First Amendment, and the Governor's actions constitute unlawful, viewpoint-based exclusion.

8. Plaintiffs respectfully ask that the Court declare that the viewpoint-based exclusion of the Plaintiffs violates the First Amendment of the United States Constitution, in addition to Article I of the Maine State Constitution, and order the Defendant to cease his

unlawful practice of censoring constituent comments, restore the Plaintiffs' posting privileges and undertake review of all people whose posting privileges have been censored, and restore all of those who have been unlawfully blocked for commenting.

9. Plaintiffs seek a judgment under 28 U.S.C. § 2201, and 5 M.R.S. §§ 4682-4683, that the Defendant's censorship of his official Facebook page, in the form of viewpoint-based exclusion, is an unconstitutional violation of Plaintiffs' rights to freedom of speech and to petition the government under the First and Fourteenth Amendments to the United States Constitution and Article I of the Maine Constitution. Plaintiffs also seek preliminary and permanent injunctive relief in the form of an order enjoining the Governor from continuing this unlawful censorship of constituents.

## THE PARTIES

10. Plaintiff Karin Leuthy is a resident of Camden, Maine, which is a part of Knox County.

11. Plaintiff Kelli Whitlock Burton is a resident of Waldoboro, Maine, which is a part of Lincoln County.

12. Defendant Governor Paul LePage is the Governor of the State of Maine. He is a resident of Augusta, Maine, with an official office in Augusta, Maine.

13. At all times relevant to this complaint, Governor LePage was acting under color of state law.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, as this action arises under the Constitution and laws of the United States.

15. This Court has subject matter jurisdiction over Plaintiffs' Maine state constitutional claims pursuant to 28 U.S.C. § 1367, as those claims are substantially related, both legally and factually, to the federal constitutional claims upon which original jurisdiction is premised.

16. This Court has personal jurisdiction over the Defendant because he is a resident of Maine.

17. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-02 and 42 U.S.C. § 1983.

18. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is a resident of the district, and a substantial part of the events or omissions giving rise to the claim occurred within this district.

19. This case is properly filed in Portland because the Plaintiffs were subject to unlawful action in Knox and Lincoln counties.

## FACTUAL ALLEGATIONS

### Facebook and Public Officials

20. **Facebook**. Facebook is a social media platform with approximately 1.94 billion monthly users worldwide, including approximately 234 million users in the United States and Canada. The site allows users to post messages and photos, to respond to or share others' messages or photos, and to interact with other Facebook users in relation to those posts.

21. **Status Update**. A "status update" is a post that is shared with a Facebook user's friends or the public, depending on the user's privacy settings. These posts can range from written messages, to photos and videos.

22. **Following**. Facebook users can subscribe to other users' posts by "following" a user's page. Users see all messages that are posted by or shared by the users or pages they have followed.

23. **Replying**. Facebook users can post replies to other users' posts or to comments on their own posts. Replies appear on the post among other users' replies.

24. **Sharing**. Facebook users can "share" another user's post, which publishes the other user's post on the user's own timeline, among their own posts.

25. **Reactions**. Facebook users also have the ability to react to posts using graphics without replying or posting their own comment. Currently, the options for graphically reacting are:



26. **Banning**. Users have the ability to "ban" other users from their page. When a user is banned from a page, they lose their ability to publish to that page, react to posts on that page, or comment on the posts on that page.

27. Facebook explains the process for and consequences of banning in its Help Center. Help Center, *How do I Ban or unban someone from my Page?*, FACEBOOK, https://www.facebook.com/help/185897171460026/?ref=u2u.

28. This is how Facebook looks to someone who has been banned from a page; note that there are comments and reactions to posts, but this user is not permitted to do either of those activities:



29. **Town Hall**. In early 2017, Facebook released a new feature called "Town Hall" as a to tool to help users find and contact their government representatives and to increase users' "civic engagement" with public officials on the social media platform. Help Center, *What is Town Hall?*, FACEBOOK,

https://www.facebook.com/help/278545442575921?helpref=search&sr=1&query=townhall.

30. To participate in "Town Hall," Facebook has requirements for the elected official's Facebook page. *Id*.

31. One requirement for "Town Hall" is that the elected official's page must be categorized as "Politician" or "Government Official," the official's page must use the "Politician template," and the description in the "Current Office" section of the page must accurately reflect the official's current government position. *Id*.

32.     The "Town Hall" feature allows Facebook users to connect to verified state and federal government officials. *Id*.

33.     When a user's "Town Hall" feature is turned on, a "constituent badge" is posted along with their name when they comment on a verified representative's Facebook page. *Id*.



34.     **Verification**. A blue badge (●) on a user's Facebook page means that the page has been "verified," or confirmed as a public figure's authentic page.

35.     **Constituent Badges**. Through the "Town Hall" feature, Facebook users are able to "opt-in to a tag" which publicly identifies them, through the use of this "constituent badge," as living in the district of an elected official when they are interacting on the elected official's government page. Whenever commenting, liking, or sharing a post by a Town Hall-identified official, the user is given the option to turn this feature on. Kerry Flynn, *Facebook is helping politicians better understand who they serve*, MASHABLE (Jun. 17, 2017), http://mashable.com/2017/06/07/facebook-constituent-badges-town-hall/#R0TG9CExDkqX.



**Governor LePage's Official Facebook Page**

36.     Governor Paul LePage owns and operates an official Facebook page entitled "Paul LePage, Maine's Governor."

37.     As Governor LePage's official page, "Paul LePage, Maine's Governor" is used by the Governor and his staff for sharing information such as news, press releases, announcements and action items to everyone with access to Facebook, including his followers, supporters, critics, and constituents.

38.     "Paul LePage, Maine's Governor" is not Governor LePage's personal page. Governor LePage's personal page is simply entitled "Paul LePage."

39.      In the "About" section of "Paul LePage, Maine's Governor," the page is described as "Paul LePage's official page – but not managed by gov't officials."



40.     "Paul LePage, Maine's Governor" is "verified" on Facebook as a public figure's authentic page and currently has 39,773 users who "like" his page:

41.     Governor LePage uses "Paul LePage, Maine's Governor" to perform government business, including relaying video messages directly to his constituents.



42.     As of July 24, 2017, "Paul LePage, Maine's Governor" was linked to Governor LePage's "Blog" on the official State of Maine Office of Governor Paul R. LePage website, as a means of staying connected with the Governor; clicking the Facebook button on this site took users to "Paul LePage, Maine's Governor."



43.     After Plaintiffs sent a letter to Governor LePage about being banned and censored, this link was disabled.

44.     "Paul LePage, Maine's Governor" is recognized as a "Politician" or "Government Official" page on Facebook's "Town Hall" feature.

10



45.     "Paul LePage, Maine's Governor" also features many posts written in the first-person from Paul LePage, indicating that Governor LePage controls the page.



46. Governor LePage stated in a radio interview on July 6, 2017 that he uses the Facebook Live video streaming feature on his Facebook page as a way of bypassing the news media and communicating directly with the public. Newsradio WGAN, Guest: Governor Paul LePage 7:38/7:50, July 6, 2017, https://soundcloud.com/newsradio-wgan/7617.

47. "Paul LePage, Maine's Governor" is interactive. It is both a platform for constituents to voice their gratitude or concerns, as well as one in which Governor LePage can engage with constituents.



48. As an official Maine governmental page, "Paul LePage, Maine's Governor" is bound by a policy established by Maine's Office of Information Technology on the use of social media for state business, which anticipates comments and contributions from constituents that may be critical of governmental officials and their policies. This policy was approved and is enforced by the Governor's office. Regarding negative commentary, the policy states: "Any scandalous, libelous, defamatory, or pornographic material, if posted, is removed as soon as discovered." The policy further states in another subsection that "[a]gencies must create and publish a *Terms of Comment* which describes how the Agency will manage user contributions to

the extent allowed by the *Social Media* site/application. The *Terms of Comment* shall detail the review criteria for acceptable comments, such as on-topic, non-duplicative, not obscene or offensive etc." "Social Media for State Business Policy," Maine Office of Information Technology, available at https://www1.maine.gov/oit/policies/SocialMediaStateBusiness.pdf (emphasis in original).

### Plaintiffs' Interaction With "Paul LePage, Maine's Governor"

#### *Karin Leuthy*

49. Plaintiff Karin Leuthy is a freelance writer and editor. She is a cofounder of Suit Up Maine, a state-wide progressive grassroots network started in November 2016. The group has more than 5,000 members who work to raise awareness of and advocate for policies, legislation and initiatives related to civil rights, social justice, healthcare, the environment, education, and other areas that affect the lives of all Mainers.

50. Ms. Leuthy initially began interacting with Governor LePage by following and commenting on Governor LePage's Facebook page during the 2014 gubernatorial election.

51. Ms. Leuthy increased her interaction with Governor LePage during the weeks leading up to the state government shut down July 2017.

52. On July 6, 2017, Ms. Leuthy made two statements to Governor LePage through "Paul LePage, Maine's Governor:" One comment quoted the Governor about intentionally misleading the press; and the second was a question about why the Governor was not responding to reporters, accompanied by a link to a Bangor Daily News article.

53. Approximately one hour after Ms. Leuthy's second comment, a supporter of Governor LePage responded to the comment. Ms. Leuthy prepared a response to this response, but before she could post it, she was banned from the site.

54. Neither of Ms. Leuthy's comments were scandalous, libelous, defamatory, pornographic, off topic, duplicative, obscene or offensive.

55. Defendant's banning of Ms. Leuthy from the "Paul LePage, Maine's Governor" Facebook page prevents or impedes her from participating in the Governor's posts and engaging in discussion with Governor LePage and with other constituents.

*Kelli Whitlock Burton*

56. Plaintiff Kelli Whitlock Burton is a science and medical freelance writer. Ms. Whitlock Burton is also a cofounder of Suit Up Maine. Ms. Whitlock Burton first commented on "Paul LePage, Maine's Governor" on July 6, 2017.

57. Ms. Whitlock Burton posted two comments on "Paul LePage, Maine's Governor" on July 6, 2017, and she took screenshots of both comments, in anticipation of their possible deletion.

58. Ms. Whitlock Burton's first comment on "Paul LePage, Maine's Governor" was a response to Governor LePage's July 4, 2017 "Happy Independence Day!" post. Ms. Whitlock Burton's post criticized the Governor's practice of deleting constituents' comments.



59. Later that same day, July 6, 2017, Ms. Whitlock Burton commented on another post on the Governor's page. Governor LePage's post discussed the media falsely reporting that he was taking a vacation.



60. On this post, Ms. Whitlock Burton posted a comment stating: "Gov. LePage, it was members of your own party who told reporters that you had said you were taking a vacation. Perhaps you should direct your anger and frustration at those who talked to the media, not at the media for reporting it."



61.     Ms. Whitlock Burton realized within hours of posting the two comments on July 6, 2017 that her comments had been deleted, and that she had been banned from further posting, liking, or replying to any content on the Governor's page.

62.     Neither of Ms. Whitlock Burton's comments were scandalous, libelous, defamatory, pornographic, off-topic, duplicative, obscene or offensive.

63.     Defendant's banning of Ms. Whitlock Burton from the "Paul LePage, Maine's Governor" Facebook page prevents or impedes her from participating in the Governor's posts and engaging in discussion with other constituents.

16

## CLAIMS FOR RELIEF

### Count I
### Violation of 42 U.S.C. § 1983
### (Free Expression)

64.     Plaintiffs hereby re-allege Paragraphs 1 through 63 as though fully set forth herein.

65.     Defendant's banning of the Plaintiffs from the "Paul LePage, Maine's Governor" account violates their right to freedom of expression because it imposes a viewpoint-based restriction on the Plaintiffs' participation in a limited public forum.

66.     By acting under the color of state law to deprive Plaintiffs of rights guaranteed by the Constitution and laws of the United States, the Defendant has violated and continues to violate 42 U.S.C. § 1983.

67.     As a result, Plaintiffs are entitled to declaratory and injunctive relief to restore their access to the Defendant's official Facebook page.

### Count II
### Violation of 42 U.S.C. § 1983
### (Right to Petition)

68.     Plaintiffs hereby re-allege Paragraphs 1 through 67 as though fully set forth herein.

69.     Defendant's banning of the Plaintiffs from the "Paul LePage, Maine's Governor" account violates the First Amendment because it imposes a viewpoint-based restriction on the Plaintiffs' ability to petition the government for redress of grievances.

70.     By acting under the color of state law to deprive Plaintiffs of rights guaranteed by the Constitution and laws of the United States, the Defendant has violated and continues to violate 42 U.S.C. § 1983.

71.     As a result, Plaintiffs are entitled to declaratory and injunctive relief to restore their access to the Defendant's official Facebook page.

**Count III**
**Violation of Article I, Section 4 of the Maine Constitution**
**(Right to Freely Speak, Write, and Publish Sentiments)**

72.     Plaintiffs hereby re-allege Paragraphs 1 through 71 as though fully set forth herein.

73.     Article I, Section 4 of the Maine Constitution affirmatively grants that, "[e]very citizen may freely speak, write and publish sentiments on any subject, being responsible for the abuse of this liberty."

74.     Defendant's banning of the Plaintiffs from the "Paul LePage, Maine's Governor" account violates Article I, Sections 4 of the Maine State Constitution because it imposes a viewpoint-based restriction on the Plaintiffs' participation in a limited public forum.

75.     As a result, Plaintiffs are entitled to declaratory and injunctive relief to restore their access to the Defendant's official Facebook page.

**Count IV**
**Violation of Article I, Section 15 of the Maine Constitution**
**(Right to Petition for a Redress of Wrongs)**

76.     Plaintiffs hereby re-allege Paragraphs 1 through 75 as though fully set forth herein.

77.     Article I, Section 15 of the Maine Constitution affirmatively grants that, "[t]he people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good, to give instructions to their representatives, and to request, of either department of the government by petition or remonstrance, redress of their wrongs and grievances."

78. Defendant's banning of the Plaintiffs from the "Paul LePage, Maine's Governor" account violates Article I, Sections 15 of the Maine State Constitution because it imposes a viewpoint-based restriction on the Plaintiffs' participation in a limited public forum.

79. As a result, Plaintiffs are entitled to declaratory and injunctive relief to restore their access to the Defendant's official Facebook page.

### Count V
### Declaratory Judgment and Injunction

80. Plaintiffs hereby re-allege Paragraphs 1 through 79 as though fully set forth herein.

81. 28 U.S.C. § 2201(a) provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

82. As described above, Plaintiffs allege that Defendant's actions violate the First Amendment to the United States Constitution and Article I of the Maine State Constitution.

83. Upon information and belief, the Defendant has refused to reinstate Plaintiffs' commenting privileges.

84. There is an actual controversy between the parties as to whether Defendant's actions violate the United States and Maine Constitutions.

85. Plaintiffs seek a declaration that Defendant's censorship of posts on his official page that are critical of him and/or his policies is unconstitutional and violates Plaintiffs' rights to freedom of speech and petition under the First and Fourteenth Amendments to the United States Constitution and Article I of the Maine State Constitution.

*****

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

a)  Declare Defendant's viewpoint-based censorship of the Plaintiffs from Defendant's Official Facebook account to be unconstitutional;

b)  Enter an injunction requiring Defendant to cease his unlawful practice of censoring Plaintiffs' comments on his Facebook page; restore the posting privileges of each Plaintiff named in this complaint; and restore the posting privileges of all of those who have been unlawfully blocked on the basis of viewpoint from commenting;

c)  Award Plaintiffs their reasonable attorney fees and costs; and

d)  Grant any additional relief as may be just and proper.

Respectfully submitted,

KARIN LEUTHY and KELLI WHITLOCK BURTON,

By their attorneys,

/s/ Zachary Heiden
Zachary L. Heiden
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, Maine 04101
Tel: 207.774.5444
Fax: 207.774.1103
zheiden@aclumaine.org

/s/Meagan Sway
Meagan Sway
American Civil Liberties Union of Maine Foundation
121 Middle Street, Suite 200
Portland, Maine 04101
Tel: 207.774.5444
Fax: 207.774.1103
msway@aclumaine.org

Dated:     August 8, 2017