## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| KARIN LEUTHY and KELLI WHITLOCK BURTON | : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Civil Action No. 1:17-cv-00296-JAW |
| PAUL R. LEPAGE, Governor of Maine, in his individual and official capacity, | : : : : : | |
| Defendant. | : : | September 14, 2018 |

### DEFENDANT'S MOTION TO CERTIFY AUGUST 29, 2018 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

Patrick Strawbridge
Maine Bar No. 10024
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
T: (617) 227-0548
E: patrick@consovoymccarthy.com

Jeffrey M. Harris (*pro hac vice*)
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
T: (202) 321-4120
E: jeff@consovoymccarthy.com

*Counsel for Defendant Paul R. LePage*

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

In this case, Plaintiffs claim they have a *constitutional* right under the First Amendment to commandeer the message on a Facebook page that was expressly created "for those who support" the Defendant, Maine Governor Paul LePage. It is undisputed that Plaintiffs can (and do) maintain their own Facebook pages, and can contribute to other pages that are highly critical of LePage. But that is not enough for them. Even though Facebook's terms of service give users an unqualified right to curate the comments posted on their pages, Plaintiffs allege that their First Amendment rights were violated when the administrators of LePage's page deleted their comments from the page and "blocked" them from posting additional comments. LePage moved to dismiss on several independent grounds but this Court denied the motion in an order issued on August 29, 2018.

LePage respectfully seeks certification of that order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and a stay of further proceedings pending appeal. The Order unquestionably involves "controlling question[s] of law as to which there is substantial ground for difference of opinion" and resolving them immediately would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

On appeal, LePage intends to raise pure questions of law about the scope of the First Amendment. In particular, he intends to challenge this Court's holding that the so-called "interactive portion" of a social media page—where users can post comments on someone else's page—can be a "public forum" in which the First Amendment limits the editorial discretion of the page's owner.[1] While Plaintiffs argue that the First Amendment forum doctrine can apply to the

---

[1] LePage recognizes that the Court determined there were factual issues that prevented it, on a motion to dismiss, from deciding whether the First Amendment should not apply here because the Facebook page at issue was maintained in LePage's *personal* rather than *official* capacity. Doc. 17 at 18-20. LePage reserves the right to raise this issue on appeal from final judgment, but does not seek to raise it in his § 1292(b) appeal. Relatedly, the arguments set forth in this motion assume the truth of all allegations pled in the complaint. Many of those allegations are incorrect as a factual matter, but LePage should prevail as a matter of law regardless of the resolution of those issues.

deletion of comments from a social media page, LePage argues that Plaintiffs' theory would infringe *his own* First Amendment rights by diluting the message he seeks to convey and forcing him to associate with views with which he disagrees. In other words, the question presented is whether a government official acts as a *speaker* or instead as a *regulator* when he or she exercises editorial discretion over the content on a social media page.

That issue is novel within this Circuit, has generated conflicting decisions in other jurisdictions, and is of significant and increasing importance. Neither the Supreme Court nor the First Circuit has addressed the circumstances (if any) in which a social media page may be deemed a "public forum" protected by the First Amendment and open to all comers. Guidance on this issue is badly needed as government officials increasingly make use of social media platforms to campaign for office, share news of their accomplishments, and communicate with constituents. Indeed, this Court expressly acknowledged the deepening division of authority on this issue by declining to follow "key pillars" of another district court decision that *rejected* a First Amendment challenge to similar actions by the Governor of Kentucky with respect to his Facebook page. Doc. 17 at 36-37. In short, a lack of governing circuit precedent, combined with confusion among the lower courts, unquestionably reflects "substantial grounds for difference of opinion" that warrants interlocutory review under § 1292(b).

Finally, if this Court certifies its Order under § 1292(b), it should stay further proceedings pending the First Circuit's resolution of the interlocutory appeal. Any discovery in this case would involve an extraordinarily burdensome (and constitutionally dubious) inquiry into LePage's expressive and associational activities. That inquiry would raise serious constitutional concerns of its own that could be alleviated with a short stay while the Governor seeks review in the First Circuit.

**BACKGROUND AND PROCEDURAL HISTORY**

Facebook is a popular social-media platform used by individuals, corporations, organizations, and government entities to share their messages with a wide audience, promote their ideas or businesses, and communicate with other users. A Facebook "profile" or "page" enables the user to curate an online identity by posting status updates, uploading photos, or "sharing" content posted by others. Facebook also allows users to "comment" on other users' posts or pages. But, recognizing the highly expressive nature of each page, Facebook gives the owner of a page absolute discretion to remove comments posted by others.

In this case, Plaintiffs seek to impose *constitutional* constraints on the use and curation of a Facebook page. The page at issue—entitled "Paul LePage, Maine's Governor"—expressly states that it was created "for those who support Governor Paul LePag[e]." Compl. ¶ 39. Absolutely nothing on the page suggests that it was intended to serve as an open forum for the posting of any views, including those critical of LePage. Plaintiffs allege that, after posting messages hostile to LePage's policies, their comments were deleted and they were blocked from contributing additional content to LePage's page. Compl. ¶¶ 49-63. It is undisputed that any deletion of Plaintiffs' comments complied with the terms of service that Plaintiffs accepted when they joined Facebook. Plaintiffs nonetheless contend that the First Amendment of the U.S. Constitution and parallel provisions of the Maine Constitution prohibit the deletion of comments critical of LePage..

LePage moved to dismiss, arguing that the Facebook page involved private speech rather than state action, but that even if the page were state action it was "government speech" that was not amenable to forum analysis. Doc. 9. This Court denied the motion. The Court held that there were potential issues of fact that precluded a ruling on whether the Facebook page was maintained in LePage's personal or official capacity. Doc. 17 at 18-20. But the Court rejected LePage's other

arguments based solely on its interpretation of the First Amendment. In particular, the Court held that posts on the "interactive portion" of the Facebook page were the speech of the commenters rather than LePage, and thus did not implicate the editorial discretion of the page's owner. *Id.* at 25-28. And the Court further held that "forum analysis does apply" to Facebook comments because these are akin to "'places' where people 'can speak and listen'" *Id.* at 33-34. The Court thus concluded that Plaintiffs stated a plausible claim that the deletion of their comments constituted impermissible viewpoint discrimination in violation of the First Amendment. *Id.* at 34.

## ARGUMENT

Section 1292(b) provides: "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). The Court of Appeals may then, "in its discretion, permit an appeal to be taken from such order." *Id.* Although appeals under § 1292(b) are limited to "rare cases," *In re San Juan Dupont Plaza Hotel Litig.*, 859 F.2d 1007, 1010 n.1 (1st Cir. 1988), the Supreme Court has emphasized that a "district court[] should not hesitate to certify an interlocutory appeal" when its ruling "involves a new legal question or is of special consequence." *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 110-11 (2009).

There is no deadline for seeking certification under § 1292(b), but courts have found such motions untimely when filed several months after the order was issued. *See Scanlon v. M.V. Super*

*Servant 3*, 429 F.3d 6, 8 (1st Cir. 2005); *Wolfchild v. United States*, 78 Fed. Cl. 472, 481 (Ct. Fed. Cl. 2007). This motion is timely because it was filed just 16 days after the Order was issued.[2]

I. **This Court's Order Meets The Criteria For § 1292(b) Certification.**

    A. **The Order Involves Controlling Questions of Law Whose Immediate Resolution Would Materially Advance the Resolution of This Litigation.**

Section 1292(b) limits interlocutory appeals to questions "of law" as opposed to "a question of fact or matter for the discretion of the trial court." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970). Review under § 1292(b) is appropriate where "the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *See McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004); *compare United States ex rel. Michaels v. Agape Senior Cmty.*, 848 F.3d 330, 340-41 (4th Cir. 2017) (discretionary matters such as admissibility of evidence not reviewable under § 1292(b)).

If granted permission to appeal, LePage would raise a critical question regarding the scope of the First Amendment: does a government official act as a *speaker* or a *regulator* when he or she curates the comments on a social media page? This Court held that the "interactive portion" of LePage's Facebook page constitutes a "public forum" that must be open to all, and that "[t]he Governor's deletion of posts and banning of participants are actions that speak to a government's role as a regulator in a marketplace of ideas, not as a participant." Doc. 17 at 25-28, 31.

LePage respectfully submits that those holdings misinterpret the First Amendment. The government has a right to "say what it wishes" and "select the views that it wants to express."

---

[2] This Court has previously expressed uncertainty about whether it has authority to certify an order for interlocutory appeal under § 1292(b) after it has already been issued. *See Widi v. U.S. Dep't of Justice*, 2011 WL 5877543, No. 1:11-cv-113 (D. Me. Nov. 23, 2011). It is well established, however, that a district court may amend an earlier order to add the necessary certification. Federal Rule of Appellate Procedure 5(a)(3) provides that when a certification from a district court is needed for a party to appeal, the district court may "amend its order, either on its own or in response to a party's motion, to include the required permission" to appeal. *See also Longwood Mfg. v. Wheelabrator*, 954 F. Supp. 17 n.1 (D. Me. 1997) (amending order to grant party's motion for § 1292(b) certification).

5

*Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 329-30 (1st Cir. 2009). A holding that deprives LePage and his supporters of the discretion to decide what speech appears on a Facebook page would "violate[] the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message," including the right "to exclude a message [he does] not like from the communication [he chooses] to make." *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 573-74 (1995). The right to post political viewpoints and policy positions on a Facebook page is inseparable from the right to delete third-party comments from that page in order to tailor and curate the message being communicated. *Id.* The exercise of such discretion is no different from a government official's right to curate the message at a political rally by excluding opponents of his policies, *see Sistrunk v. City of Strongsville*, 99 F.3d 194, 198 (6th Cir. 1996), or to choose what third-party content may be posted on a government website, *see Sutliffe*, 584 F.3d at 329-34.

LePage would also argue on appeal that the confusing and difficult-to-apply "forum" doctrine—which was developed in the very different context of access to *physical* spaces such as public streets and parks—should not be extended to government speech on social media platforms. *See, e.g.*, *Walker v. Texas Div., Sons of Confederate Veterans*, 135 S. Ct. 2239, 2250 (2015) ("[The] government 'does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse.'"); *Student Gov't Ass'n v. Bd. of Trustees of University of Mass.*, 868 F.2d 473, 477 (1st Cir. 1989) (courts should be "reluctant to extend the forum doctrine[]" to new circumstances absent a "specific mandate from the Supreme Court").

Social media networks are so revolutionary precisely because they enable any citizen to spread his or her message to millions of others with just a few keystrokes. Unlike many of the

cases in which the public forum doctrine has been invoked, nobody needs access to LePage's Facebook page to communicate their message; Plaintiffs can easily create their own page or post comments on some of the many other Facebook pages that are highly critical of LePage.[3] They can even screen-shot a public page like LePage's and then comment in a parallel post. The ease with which individuals can engage in unfettered speech and association through social media platforms only underscores why courts should not attempt to shoehorn these new technologies into the ill-fitting (and confusing) forum doctrine that was developed in a very different context.

Finally, "a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997); *see also Arizona v. Ideal Basic Indus.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court."); *Bank of N.Y. v. Hoyt*, 108 F.R.D. 184, 188 (D.R.I. 1985) ("'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally … ").

A ruling in favor of LePage on the issues discussed above would effectively terminate this action. If the curation of comments on a Facebook page is not subject to "forum" analysis, then Plaintiffs could not state a claim under the First Amendment (or the parallel provisions of the Maine Constitution) based on the deletion of their comments. And, if the deletion of comments from LePage's page is not subject to First Amendment scrutiny at all, it is difficult to see how Plaintiffs could maintain a viable claim under the Petition Clause. A victory on appeal would effectively mark the end of this case.

---

[3] *See, e.g.,* 61 Percent, FACEBOOK, http://goo.gl/Xeemfz ("We are the 61% of Maine that did not vote for Paul LePage."); Impeach Gov. LePage, FACEBOOK, http://goo.gl/3QvAp1; Paul LePage Is an Ass, FACEBOOK, http://goo.gl/C7tUU1.

### B. There Is Substantial Ground for Difference of Opinion on These Questions.

A "substantial ground for difference of opinion" arises when an issue involves "one or more difficult and pivotal questions of law not settled by controlling authority." *Philip Morris*, 957 F. Supp. at 330; *see also Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990) ("[I]mpressed by the issue's novelty and importance . . . we allowed an interlocutory appeal"); *Abtox Inc. v. Exitron Corp.*, 888 F. Supp. 6, 7 (D. Mass. 1995) (noting novelty of question).

Neither the First Circuit nor the Supreme Court has addressed whether and to what extent the First Amendment constrains public officials' editorial discretion over a social media page. Courts have recognized that an individual's *use* of social media—for example, posting photos of a marked ballot after voting—is core speech protected by the First Amendment. *See*, *e.g.*, *Rideout v. Gardner*, 838 F.3d 65 (1st Cir. 2016) (invalidating New Hampshire ban on "ballot selfies"); *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) (invalidating statute prohibiting sex offenders from accessing social media sites). But no federal appellate court has addressed the distinct question of whether an individual has a First Amendment right to comment on *someone else's* social media page over that person's objection—a context in which there are speech interests on both sides. That issue is just beginning to percolate through the appellate courts,[4] and it would promote both the orderly development of the law and the resolution of this case to give the First Circuit an opportunity to promptly address this important constitutional question.

---

[4] President Trump recently appealed a decision finding that he violated the First Amendment by "blocking" certain individuals on Twitter; that case is currently pending before the Second Circuit. *See Knight First Amendment Inst. v. Trump*, No. 18-1691 (2d Cir.). Notably, the district court in *Knight* did not broadly hold that any social-media account of the President is a public forum subject to First Amendment constraints. Indeed, the court recognized that the President's messages over which he exercises control, including his Twitter timeline, constitute government speech. 302 F. Supp. 3d 541, 571-72 (S.D.N.Y. 2018). The only aspects of the President's Twitter account that, according to the district court, were subject to First Amendment scrutiny were "replies and retweets," *id.* at 572—unique Twitter tools that do not exist on the Facebook platform and are not at issue in this case. Although several aspects of the *Knight* court's reasoning are questionable, LePage can prevail here even if the First Circuit endorses *Knight*'s holding. *See* Doc. 16 (explaining why *Knight* "is both inapposite and based on flawed analysis").

8

There is also "confusion and disagreement" among the district courts that have considered this issue. *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 (D. Mass. 2005). Like this case, *Morgan v. Bevin*, 298 F. Supp. 3d 1003 (E.D. Ky. 2018), involved a First Amendment challenge to a governor's deleting or blocking certain comments on his Facebook page. Although *Morgan* arose in a preliminary-injunction posture rather than a motion-to-dismiss posture, the court's *legal analysis* is irreconcilable with this Court's holding. The *Morgan* court held that "Governor Bevin's Twitter and Facebook accounts are a means for communicating his own speech, not the speech of his constituents," and that the plaintiffs "have no [c]onstitutional right to be heard in this precise manner" by commenting on the Governor's page. *Id.* at 1011. In short, "Governor Bevin is not suppressing speech, but is merely culling his Facebook and Twitter accounts to present a public image that he desires." *Id.* at 1012. That reasoning would have compelled the dismissal of this case, and this Court expressly stated that it was declining to follow the "key pillars" of the *Morgan* court's analysis. Doc. 17 at 36-37. *Morgan* underscores that there is not just "substantial ground" for difference of opinion but an *actual conflict* on the questions presented here.

Finally, this case raises issues of significant (and rapidly increasing) importance. This case is one of many recently filed actions that seek to constitutionalize government officials' use of social media[5]—an issue of profound importance to any candidate or official who seeks to communicate with voters or constituents through this new medium. A holding that comments on a Facebook page or replies to a Twitter post may acquire *constitutional protections* against deletion—enforceable through § 1983 suits—would inevitably lead many government officials to cease using these platforms or dramatically change the manner in which they are used. Either way,

---

[5] *See, e.g., Laurenson v. Hogan*, No. 8:17-cv-2162 (D. Md. Aug. 1, 2017); *Morgan v. Bevin*, No. 3:17-cv-60 (E.D. Ky. July 31, 2017); *Knight First Amendment Institute v. Trump*, No. 1:17-cv-5205 (S.D.N.Y. July 11, 2017).

9

however, it is imperative to obtain a prompt and definitive answer from the First Circuit about what (if any) First Amendment "forum" analysis applies to social media sites.

## II. If The Court Grants § 1292(b) Certification, It Should Stay Proceedings Pending Resolution Of The Interlocutory Appeal.

If this Court grants certification for appeal under §1292(b), it should also stay further proceedings pending resolution of the interlocutory appeal. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970) (applying four-factor test); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009) (same). "Especially in cases of extraordinary public moment," the opposing party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

Any discovery in this case would involve an extraordinarily burdensome (and constitutionally dubious) inquiry into the expressive and associational activities of the Governor of Maine. *See, e.g.*, *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (quashing subpoena for testimony of FDA Commissioner because "the practice of calling high officials as witnesses should be discouraged" in light of separation-of-powers concerns and the "time constraints" facing senior government officials); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-65 (9th Cir. 2010) (discussing First Amendment concerns with discovery into expressive and associational activity). Those concerns could be alleviated with a short stay of further proceedings while the Governor pursues an appeal in the First Circuit. *See, e.g.*, *In re Trump*, 874 F.3d 948, 952-53 (6th Cir. 2017) (granting § 1292(b) appeal to ensure civil case against the President was "on a solid footing before permitting litigation to continue" due to "[t]he practical and political consequences" of the case).

## **CONCLUSION**

For the reasons stated, LePage respectfully requests that this Court amend its order of August 29, 2018 to certify that order for interlocutory review pursuant to § 1292(b) and stay further proceedings pending resolution of that appeal.

Respectfully submitted,

By: */s/ Patrick Strawbridge*
Patrick Strawbridge
Maine Bar No. 10024
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
T: (617) 227-0548
E: patrick@consovoymccarthy.com

Jeffrey M. Harris (*pro hac vice*)
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
T: (202) 321-4120
E: jeff@consovoymccarthy.com

September 14, 2018                              *Counsel for Defendant Paul R. LePage*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2018, a copy of the foregoing was electronically filed. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Patrick Strawbridge*
Patrick Strawbridge

*Counsel for Defendant*
