UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KARIN LEUTHY and KELLI WHITLOCK BURTON | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 1:17-cv-00296-JAW ) |
| PAUL R. LePAGE, in his individual and official capacity as Governor of Maine, | ) ) ) ) ) |
| Defendant. | ) |

**ORDER ON MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND MOTION TO STAY**

Having ruled against the Governor's motion to dismiss a lawsuit, which claims he violated First Amendment rights by exercising viewpoint discrimination against citizens when he deleted their comments on a social media page, the Court declines the Governor's request to certify the issue for interlocutory appeal to the Court of Appeals for the First Circuit and dismisses as moot the Governor's motion to stay the case.

**I. BACKGROUND**

Karin Leuthy and Kelli Whitlock Burton filed a Complaint pursuant to 42 U.S.C. § 1983 against Governor Paul R. LePage, in both his individual and official capacities, alleging that by blocking their access to and by deleting their comments on a social media page they claim is his official website, the Governor violated their

right to free speech and to petition the government for a redress of grievances guaranteed by both the United States and Maine constitutions. *Compl.* (ECF No. 1).

On October 13, 2017, Governor LePage filed a motion to dismiss the Complaint for failure to state a claim. *Def.'s Mot. to Dismiss* (ECF No. 9). The Plaintiffs responded on November 3, 2017. *Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss* (ECF No. 11). The Governor replied to the Plaintiffs' response on November 17, 2017. *Def.'s Reply in Supp. of Mot. to Dismiss* (ECF No. 12). On August 29, 2018, the Court denied the Governor's motion to dismiss because it was required on a motion to dismiss to assume the truth of the well-pleaded facts and inferences in the Complaint. *Order on Mot. to Dismiss* (ECF No. 17).

The Governor filed two motions: first, for certification of an interlocutory appeal of the Court's Order on the Governor's motion to dismiss, and second, to stay further proceedings pending resolution of that appeal. *Def.'s Mot. to Certify August 29, 2018 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)* (ECF No. 21) (*Def.'s Mot.*). On September 17, 2018, Plaintiffs filed their response to the Governor's motion to certify, and on September 20, 2018, the Governor filed his reply. *Pls.' Resp. to Mot. to Certify August 29, 2018 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)* (ECF No. 23) (*Pls.' Opp'n*); *Def.'s Reply to Pls.' Resp. to Mot. to Certify August 29, 2018 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)* (ECF No. 24) (*Def.'s Reply*).

## II. THE POSITIONS OF THE PARTIES

### A. The Governor's Motion for Certification

In his motion, the Governor claims that he accepts the truth of the allegations in the Plaintiffs' Complaint and nevertheless, should prevail as a matter of law. *Def.'s Mot.* at 1 n.1.[1] He says that the "so-called 'interactive portion' of a social media page" cannot be a "'public forum' in which the First Amendment limits the editorial discretion of the page's owner." *Id.* The Governor maintains that "Plaintiffs' theory would infringe *his own* First Amendment rights by diluting the message he seeks to convey and forcing him to associate with views with which he disagrees." *Id.* at 3 (emphasis in original). In other words, the Governor says, "the question presented is whether a government official acts as a *speaker* or instead as a *regulator* when he or she exercises editorial discretion over the content on a social media page." *Id.* (emphasis in original). The Governor concedes that the issue is "novel within this Circuit, has generated conflicting decisions in other jurisdictions, and is of significant and increasing importance." *Id.* If the Court certifies its order to the First Circuit under 28 U.S.C. § 1292(b), the Governor urges the Court to stay the proceedings. *Id.*

The essence of the Governor's argument is that by curating his Facebook page, the Governor is engaging in speech, which is entitled to protection under the First Amendment. *Id.* at 6-7. Citing *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995), the Governor contends that his right to "choose the content of his own message" includes the right to "exclude a message [he does]

---

[1] The pagination of the Governor's motion differs from the ECF pagination because page one of the Governor's motion is entirely the caption so his argument begins on his page one, which is ECF page two. The Court has used the ECF pagination.

not like from the communication [he chooses] to make." *Id.* at 7 (quoting *Hurley*, 515 U.S. at 573-74).

The Governor states that he would "also argue on appeal that the confusing and difficult-to-apply 'forum' doctrine—which was developed in the very different context of access to *physical* spaces such as public parks—should not be extended to government speech on social media platforms." *Id.* at 7 (emphasis in original). The Governor says that a ruling in his favor "would effectively terminate this action" and he wishes to present a legal issue that is "controlling." *Id.* at 8. He also maintains that there is a "substantial ground for difference of opinion," since the issue involves "one or more difficult and pivotal questions of law not settled by controlling authority." *Id.* at 9 (quoting *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997)). Citing two district court decisions, the Governor argues that there is "confusion and disagreement" among the district courts that have considered this issue. *Id.* at 10 (citing *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 (D. Mass. 2005); *Morgan v. Bevin*, 298 F. Supp. 3d 1003 (E.D. Ky. 2018)). The Governor says that this issue is "of significant (and rapidly increasing) importance." *Id.* He urges the Court to stay the proceedings while the matter is resolved by the First Circuit, noting that the discovery in this case would "involve an extraordinarily burdensome (and constitutionally dubious) inquiry into the expressive and associational activities of the Governor of Maine." *Id.* at 11.

B. **The Plaintiffs' Opposition**

4

The Plaintiffs oppose the Governor's motion for certification. First, they point out that the First Circuit typically does not "grant interlocutory appeals from a denial of a motion to dismiss." *Pls.' Opp'n* at 1 (quoting *Millay v. Me. Dep't of Labor*, 11-cv-00438-NT, 2013 WL 105174, 2013 U.S. Dist. LEXIS 2502, at *3 (D. Me. Jan. 8, 2013) (quoting *Caraballo-Seda v. Municipality of Hormiqueros*, 395 F.3d 7, 9 (1st Cir. 2005) (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984))). The Plaintiffs note that interlocutory appeals are disfavored and are to be used "only in exceptional circumstances." *Id.* at 2 (quoting *Caraballo-Seda*, 395 F.3d at 9 (quoting *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986)). They cite the First Circuit's wish to avoid "piecemeal litigation" and they mention concerns about "mootness, ripeness, and lengthy appellate proceedings." *Id.* (quoting *Caraballo-Seda*, 395 F.3d at 9).

The Plaintiffs argue that "[n]o exceptional circumstances exist here." *Id.* at 2. As for the Governor's contention that he has accepted all the facts in the Plaintiffs' Complaint, they disagree, observing that the Complaint alleges not that the Governor exercised "editorial discretion", but that he "censored Plaintiffs' comments based on viewpoint." *Id.* at 3. The Plaintiffs contend that the Court correctly analyzed the public forum issues but also maintain that the public forum question is not determinative, because "viewpoint-based censorship . . . is prohibited in all types of forum, whether public or not." *Id.*

Next, the Plaintiffs posit that the Governor failed to address the three criteria for § 1292(b) certification: that the order (1) "involv[es] a controlling question of law,"

5

(2) "as to which there is substantial ground for difference of opinion," and (3) for which "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* at 3 (quoting § 1292(b)). The Plaintiffs contend that even if the Governor has presented a "controlling question of law," the same can be said for every motion to dismiss. *Id.* at 4. As for "substantial ground for difference of opinion," the Plaintiffs argue that "Governor LePage cites no contrary decision within this circuit." *Id.* As for the third factor, the Plaintiffs say that "there is nothing exceptional about this filing that merits an interlocutory appeal." *Id.* The Plaintiffs worry that if the Court granted the interlocutory appeal, it would "entail lengthy proceedings before the First Circuit with no guarantee that the appeals court would ultimately consider the issue." *Id.* at 4-5. Furthermore, the Plaintiffs argue against the granting of a stay. *Id.* at 5.

### C. The Governor's Reply

In reply, the Governor reiterates his view that "[a]n immediate appeal under § 1292(b) would both facilitate a prompt resolution of this case and promote the orderly development of the law in a critical area of First Amendment doctrine." *Def.'s Reply* at 1. The Governor emphasizes that despite the rule disfavoring interlocutory appeals, the First Circuit has "routinely accepted interlocutory appeals under § 1292(b) when the relevant criteria are satisfied—even if the order involved denial of a motion to dismiss." *Id.* at 1-2 (citing *SEC v. Rocklage*, 470 F.3d 1, 3 (1st Cir. 2006); *Torrens v. Lockheed Martin Servs. Group, Inc.*, 396 F.3d 468, 471 (1st Cir. 2005); *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 3 (1st Cir. 1994); *Barnard v. Zapata Haynie*

6

*Corp.*, 975 F.2d 919 (1st Cir. 1992); *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990); *Miller v. New Am. High Income Fund*, 755 F. Supp. 1099, 1110 (D. Mass. 1991)).

The Governor disagrees with the Plaintiffs that he is disputing the factual allegations in the Complaint. *Id.* at 2. He stresses that he accepts as true "the core *factual* premise of the complaint, which is that certain comments critical of LePage were deleted from the Facebook page at issue and that he is responsible, in his official capacity, for moderating those comments." *Id.* (emphasis in original). He says that the Plaintiffs have "nicely summarized" his argument on appeal: "whether the deletion of comments or replies on a social media page involves government *speech* (*i.e.* editorial discretion) or government *regulation* (*i.e.* 'censorship')." *Id.* at 2-3 (emphasis in original). Even if the Supreme Court and the First Circuit have provided "*general* guidance" about the First Amendment forum doctrine, the Governor continues to argue that the guidance is "*confusing and difficult to apply.*" *Id.* at 3 (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 693-94 (1992) (Kennedy, J., concurring in the judgments); *Del Gallo v. Parent*, 557 F.3d 58, 69 n.6 (1st Cir. 2009) (emphasis in reply)). The Governor argues that neither the Supreme Court nor the First Circuit has provided "*any* meaningful guidance about the significant and increasingly important question presented here: whether and to what extent the forum doctrine constrains government officials' moderation of 'comments' or 'replies' on a third-party social media site." *Id.* (emphasis in reply). The Governor is critical of the Plaintiffs for failing to cite or distinguish "contrary

7

authority that this Court has expressly declined to follow." *Id.* at 4 (citing *Morgan*, 298 F. Supp. 3d at 1003). Again, the Governor urges the Court to grant a stay, if it grants the certification motion. *Id.* at 4-5.

## III. LEGAL STANDARD

Federal statutory law provides for interlocutory appeals from decisions of district courts to circuit courts of appeal. 28 U.S.C. § 1292(a)(1). The statute imposes significant hurdles before a district court may certify an interlocutory appeal to the circuit court:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

§ 1292(b) (emphasis in original).

The First Circuit has interpreted § 1292(b) as imposing three requirements for an order: (1) it must involve "a controlling question of law;" (2) "as to which there is substantial ground for difference of opinion;" and (3) for which "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Caraballo-Seda*, 395 F.3d at 9 (quoting § 1292(b)). "Certifications under § 1292(b) are not looked upon with favor by the First Circuit." *Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 168 (D. Mass. 2010). In fact, the First Circuit has described appeals

8

under § 1292(b) as "hens' teeth rare." *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004).

The First Circuit has "repeatedly emphasized that 'interlocutory certification under § 1292(b) should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority.'" *Caraballo-Seda*. 395 F.3d at 9 (quoting *Palandjian*, 782 F.2d at 314) (quoting *McGillicuddy*, 746 F.2d at 76 n.1)). "As a general rule," the First Circuit does not grant interlocutory appeals from a denial of a motion to dismiss. *Id.* (quoting *McGillicuddy*, 746 F.2d at 76 n.1). This reflects the First Circuit preference "against piecemeal litigation as well as prudential concerns about mootness, ripeness, and lengthy appellate proceedings." *Id.* Even if, as the Governor states, the First Circuit has on rare occasion accepted an interlocutory appeal of a ruling on a motion to dismiss, generally it will not do so.

## IV. DISCUSSION

Although the Court understands Governor LePage's desire for a speedy and final resolution of this case, the Court cannot conclude that this matter is appropriate for interlocutory appeal. The problem continues to be that the parties do not agree on the nature of the webpage at the center of this dispute. The Complaint repeatedly describes the webpage as Governor LePage's "official 'Paul LePage, Maine's Governor' Facebook page." *Compl.* ¶¶ 1, 3 ("Governor LePage's official Facebook page"); 5 ("The Governor's Facebook page"). Although in his motion the Governor asserts that his "arguments assume the truth of all allegations in the complaint," *Def.'s Mot.* at 1 n.1,

the Governor challenges the Plaintiffs' description of the webpage, stating that it is "a third-party social media site." *Def.'s Reply* at 3 ("In all events, Plaintiffs do not—and cannot—dispute that neither the Supreme Court nor the First Circuit has provided *any* meaningful guidance about the significant and increasingly important question presented here: whether and to what extent the forum doctrine constrains government officials' moderation of 'comments' or 'replies' on <u>a third-party social media site</u>") (italics in reply; underline supplied). The Plaintiffs and the Governor therefore disagree on a central fact: whether the webpage is the Governor's official webpage or a third-party webpage on which the Governor posts comments and exercises some control.

If the webpage is a third-party social media site, a different legal analysis results since the decision to include or exclude comments might not be a function of government but of a third-party operator, and the nature of the forum would be different. If the webpage is the Governor's official website, the Governor's decision to allow and exclude comments may have constitutional ramifications. To posit one question, it is unclear whether a social media platform like this website is the same as a campaign rally by an incumbent, where protesters can "easily interfere with and even halt the elected official's speech." *Order on Mot. to Dismiss* at 27 (ECF No. 17). If the website were inundated with comments from political foes of the Governor, would the Governor be effectively unable to exercise his right to speak? *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 574-75 (2005) (Souter, J., dissenting) (discussing the so-called Heckler's Veto Doctrine).

10

Based on the allegations of the Complaint alone, neither this Court nor the First Circuit can answer such critical facts and, unlike the cases the Governor cited where the First Circuit accepted interlocutory appeals of the denial of a motion to dismiss, critical issues in this case require a factual predicate beyond the allegations in the Complaint. In other words, at its crux, the central issues in this case are factual, and questions on the appropriate legal analytical framework can only be resolved once the underlying facts have been clarified. As a result, this matter is not appropriate for interlocutory appeal.

The Court is sensitive to the Governor's point about the burdens of discovery on the Governor of the state of Maine, who is elected to exercise "[t]he supreme executive power of this State." ME. CONST. art. V, § 1. "The need for limited access to high government officials through the discovery process is well established." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007). In *Bogan*, the First Circuit quoted the Eleventh Circuit that "[h]igh ranking government officials have greater duties and time constraints than other witnesses." *Id.* (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)). The First Circuit added that "without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* This has become an increasing concern over the last decade where opponents of whichever party is in power have more frequently resorted to litigation to achieve what they did not at the ballot box. In this case, the potential constitutional tension between the executive and judicial branches of government is compounded by issues of federalism.

The Magistrate Judge recently issued a procedural order, which (among other things) addresses possible stipulations and topic areas for proposed stipulations; it seems clear that the Magistrate Judge intends to closely monitor discovery issues and will act decisively to resolve disputes. *Procedural Order* (ECF No. 26). Though the discovery issue raised by the Governor is admittedly a particular concern, it does not justify the certification of an interlocutory appeal and can be addressed in the ordinary course.

## V. CONCLUSION

The Court DENIES Defendant's Motion to Certify August 29, 2018 Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (ECF No. 21) and the Court DISMISSES as moot Defendant's Motion to Stay (ECF No. 21).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of October, 2018